LUGGAGE AND LEATHER GOODS MANUFACTURERS OF AMERICA, INC., and International Leather Goods, Plastics and Novelty Workers' Union, AFL–CIO, Plaintiffs,

v.

The UNITED STATES et al., Defendants.

Court No. 83–6–00943.

United States Court of International Trade.

May 11, 1984.

tional trade policy, established by Congress as Title V of the Trade Act of 1974 (19 U.S.C. § 2461 *et seq.*).

Plaintiffs—a domestic trade association and a labor union—challenge the legality of Presidential action taken under the GSP allowing goods designated by the President as "eligible articles" to be imported into the United States duty-free when imported directly from designated "beneficiary developing countries".[1] The objective of the GSP, as expressed in section 501 of the Act (19 U.S.C. § 2461), is to further the "economic development of [beneficiary] developing countries", tempered by concern for "the anticipated impact of such action on United States producers of like or directly competitive products". In furtherance of the latter consideration, section 503(c)(1) of the Act, 19 U.S.C. § 2463(c)(1), provides that the President "may not" designate certain categories of "import-sensitive articles" as eligible for duty-free treatment under the GSP program. The very first category of such "import-sensitive articles" excluded from the GSP program is "textile and apparel articles which are subject to textile agreements". 19 U.S.C. § 2463(c)(1)(A).

Central to the controversy in the present case is the President's Executive Order 12302, 46 Fed.Reg. 19901 *et seq.*, designating "flat goods, of textile materials except cotton" covered by item 706.39 of the Tariff Schedules of the United States ("TSUS") (hereinafter "man-made fiber flat goods") as articles eligible for duty-free treatment under the GSP[2] when imported from beneficiary developing countries (except Hong Kong, Taiwan and Korea).

*Background*

Plaintiff Luggage and Leather Goods Manufacturers of America, Inc.

Miller & Chevalier, Chartered, Washington, D.C. (Donald Harrison, Washington, D.C., of counsel) for plaintiffs.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C., and Velta A. Melnbrencis, New York City, for defendants.

BERNARD NEWMAN, Senior Judge:

*Introduction*

The Court is again faced with a challenge to the President's construction of a statutory provision under the Generalized System of Preferences ("GSP"), a program of great significance to this nation's interna-

---

**1.** In Executive Order 11888, dated November 24, 1975, the President implemented the GSP by designating the beneficiary developing countries and some 2,734 articles, referring to TSUS item numbers (and statistical divisions thereof) as eligible articles. General Headnote 3, TSUS, was amended to list in subsection (c) the designated beneficiary developing countries and to

include provisions concerning article eligibility for purposes of the GSP.

**2.** The President's designation of man-made fiber flat goods as articles eligible for GSP treatment effectively reduced the duty rate on imports of these items from beneficiary developing countries from 20 percent ad valorem (the normal column 1 rate under item 706.39, TSUS) to zero.

("LLGMA") is alleged to be a non-profit trade association that represents approximately 250 manufacturers accounting for an estimated 90 percent of the United States production of luggage and personal leather goods, as well as a substantial number of suppliers to the luggage and personal leather goods industries. Among the products manufactured by members of LLGMA are flat goods, including man-made fiber flat goods that are the subject of this action.

Plaintiff International Leather Goods, Plastics and Novelty Workers' Union, AFL–CIO ("the Union") allegedly represents approximately 25,000 workers employed by domestic manufacturers of luggage and personal leather goods. Among the products produced by members of the Union are man-made fiber flat goods.

Man-made fiber flat goods are small flat wares designed to be carried on the person: including bill folds, key cases, coin purses and similar articles of textile materials other than cotton, such as, nylon, rayon, or polyester. See TSUS Schedule 7, part 1, subpart D, headnote 2(c). Imports of man-made fiber flat goods are currently classifiable for customs duty purposes under item 706.39, TSUS.[3]

Effective January 1, 1974, the United States entered into a multilateral international agreement concerning textiles known as the "Arrangement Regarding International Trade in Textiles" or simply, the "Multifiber Arrangement" ("MFA"), 25 U.S.T. 1001, T.I.A.S. 7840, 39 Fed.Reg. 13308 (1973).[4] The MFA is the principal international agreement governing the regulation of international trade in textiles and textile products. Every major textile importing and exporting country in the world—except the Peoples Republic of Chi-

na and Taiwan—is a party to the MFA. While the MFA does not itself establish any quantitative restraints on trade in textiles, it nevertheless establishes certain basic objectives, standards and a framework for imposing such restraints among the signatory nations by bilateral agreements.[5] Man-made fiber flat goods are encompassed by the definition of the term "textiles" for purposes of the MFA.[6]

The President, by Executive Order No. 12302, dated April 1, 1981, amended the list of articles eligible for duty-free treatment under the GSP to include, among other articles, man-made fiber flat goods. 46 Fed.Reg. 19901, *et seq.* (1981). Prior to the President's amendment of the list of GSP eligible articles to include man-made fiber flat goods, no textile or textile product subject to the MFA had been designated as an eligible article under the GSP program. Currently, man-made fiber flat goods are the only textile products covered by the MFA that the President has designated as eligible for duty-free treatment under the GSP.

By letter dated May 13, 1981, a consultant for plaintiff LLGMA requested the United States Trade Representative ("USTR") to examine the decision to designate man-made fiber flat goods for GSP treatment arguing that "[s]ince these textile flat goods are covered by the MFA," they "are therefore 'import-sensitive' articles excluded from GSP coverage by law." The General Counsel of the Office of the USTR, by letter dated August 31, 1981, responded advising, *inter alia:*

> Since the Trade Act of 1974 was enacted, the limitation on the President's authority to designate articles contained in section 503(c)(1)(A) has been interpreted

---

**3.** Previously, man-made fiber flat goods were classified under item 706.27, TSUS (prior to March 31, 1982) and item 706.24 (prior to March 31, 1981.)

**4.** Pursuant to Article 16, the MFA initially remained in effect for four years. The MFA was subsequently extended until December 31, 1981, 29 U.S.T. 2287, T.I.A.S. 8839; and on December 22, 1981 the MFA was extended for a period of

four years and seven months, until July 31, 1986, on the basis of the "Protocol Extending the Arrangement Regarding International Trade in Textiles", T.I.A.S. 10323. Hence, the MFA has been in effect for over a decade.

**5.** MFA, Articles 1 and 4.

**6.** MFA, Article 12.

consistently as limiting eligibility only on articles for which restraints have been imposed through bilateral agreements and not on articles on which restraints simply might be imposed at some future time using the authority of the Multi-Fiber Agreement. The language of the statute and of Ambassador Eberle's [the President's Special Representative for Trade Negotiations] letter clearly support that interpretation...

In the past, this office has initiated investigations when an article already eligible becomes subject to restraints under a bilateral agreement. We will also follow this procedure in this case. A Federal Register notice announcing this action will be published shortly. I will see you are kept informed of our progress.

Upon learning that man-made fiber flat goods had been designated as eligible articles under the GSP, plaintiffs sought "correlation coverage" for these products and to have them removed from the list of eligible articles.

"Correlation coverage" refers to the Textile Category System ("TCS")[7] used by the Committee for the Implementation of Textile Agreements ("CITA")[8] to monitor imports of textile products and to administer the United States textile and apparel trade agreements program. *See* 47 Fed.Reg. 55709 (1982). Although man-made fiber flat goods did not have a TCS correlation number in April 1981 (when they were designated as eligible articles under the GSP), on October 5, 1981 CITA announced that man-made fiber flat goods covered by item 706.2700, TSUS (now item 706.3900, TSUS) would be included in TCS category number 669.[9] 46 Fed.Reg. 48963, 48966 (1981). In a later notice dated December 18, 1981, CITA explained that effective January 1, 1982, man-made fiber flat goods would be "covered under the textile program".[10] 46 Fed.Reg. 61687, 61688 (1981).[11]

Shortly after man-made fiber flat goods were provided correlation coverage under the TCS, *viz.*, on October 26, 1981, the Trade Policy Staff Committee ("TPSC")[12]

---

7. The TCS consists of 109 categories of textile and apparel articles subject to the MFA, which categories are, in turn, "correlated" to items in the TSUS to facilitate the monitoring of United States imports of articles subject to textile agreements.

8. By *Executive Order 11651*, issued March 3, 1972, as amended by Executive Order 11951, the President established CITA, consisting of representatives of the United States Departments of State, Treasury, Commerce and Labor, as well as the United States Trade Representative. CITA functions as the President's delegate in the administration of the textile import program: (1) to supervise the implementation of all textile trade agreements, and (2) to the extent authorized by the President and by such officials as the President may from time to time designate, to take appropriate actions concerning textiles and textile products under section 204 of the Agriculture Act of 1956, 7 U.S.C. § 1854, and under the MFA, 37 Fed.Reg. 4699 and 42 Fed.Reg. 1453.

9. Effective January 1, 1983, flat goods, handbags and luggage articles in TCS category number 669 were transferred to a new TCS category number, TCS number 670. 47 Fed.Reg. 55709, 55711 (1982).

10. Mr. Paul T. O'Day, the Deputy Assistant Secretary of Commerce for Textiles and Apparel and Chairman of CITA, by letter to plaintiffs'

representative dated June 12, 1981, agreed that trade in man-made fiber flat goods "in the past few years appears to have increased to the point to warrant CORRELATION coverage" under the TCS. Interestingly, Mr. O'Day also expressed concern that man-made fiber flat goods had been improperly included as "eligible articles" under the GSP program, and stated that he would "remind the appropriate individuals [at the USTR] that products covered by the MFA should not be granted GSP".

11. In this December 1981 notice, CITA explained that certain products that were to be included in TCS category number 669 effective January 1, 1982, including man-made fiber flat goods, "were not included in the U.S. bilateral textile and apparel agreements when those agreements were negotiated," so that although these products would be "covered under the textile program," they would not be subject to the limits of current bilateral textile and apparel agreements. 46 Fed.Reg. 61687, 61688 (1981).

12. By regulation (15 CFR, Ch. XX, Parts 2000–2003), on April 18, 1975, the USTR (40 Fed.Reg. 18421) established as a subordinate body of the Trade Policy Committee, the Trade Policy Committee Review Group ("TPCRG"), and as a subordinate body of the TPC and the TPCRG, the Trade Policy Staff Committee, composed of representatives of the USTR and of the Depart-

gave notice in the Federal Register that it was considering the removal of man-made fiber flat goods from the list of eligible articles receiving duty-free treatment under the GSP. 46 Fed.Reg. 52269 (1981). Plaintiffs filed comments in support of this proposal, and no comments were filed in opposition. However, defendants have not removed man-made fiber flat goods from the list of eligible articles.

Ambassador Brock, the United States Trade Representative, advised on April 29, 1983 that his decision to continue GSP duty-free treatment for flat goods of man-made fiber was based upon two factors:

The first was that the President's authority to designate articles covered by section 503(c)(1)(A) of the Trade Act of 1974 has been interpreted consistently as limiting eligibility only on articles for which restraints have been imposed, that is, those that are subject to bilateral agreements under the MFA. Thus, articles which have been assigned correlation numbers but which are not subject to bilateral agreements would not fall within the scope of the statutory exclusion. This interpretation is consistent with the language of the statute and the legislative history.

The second reason for my decision was the small amount of flat goods eligible for GSP treatment. In my letter of March 2, I indicated that less than 10 percent of U.S. imports of these articles received GSP treatment in 1982. In the first two months of this year, less than 5 percent of U.S. imports of flat goods were from GSP beneficiary countries.

Unsuccessful in their efforts at the administrative level to terminate duty-free treatment for man-made fiber flat goods under the GSP, plaintiffs commenced this action on June 30, 1983, seeking a declaratory judgment that man-made fiber flat goods are not eligible for GSP treatment, and that defendants acted contrary to law in designating such products as eligible articles under the GSP program and by failing to remove man-made fiber flat goods from the list of eligible articles receiving duty-free treatment under the GSP. Plaintiffs further requested the Court to enjoin defendants from maintaining man-made fiber flat goods on the list of GSP eligible articles.

Jurisdiction over this action is alleged under 28 U.S.C. § 1581(i) and standing is alleged under 28 U.S.C. § 2631(i). Defendants, however, insist that the Court does not have jurisdiction over this action; that plaintiffs have failed to exhaust their administrative remedies; and that plaintiffs have no standing to prosecute this action.

The gravamen of plaintiffs' complaint is that the President's Executive Order 12302 designating man-made fiber flat goods as eligible articles under the GSP violated 19 U.S.C. § 2463(c)(1), which provides that the President "may not" designate an article as eligible for GSP treatment if such article is within specified categories of "import-sensitive" articles. Plaintiffs rely on the first category of import-sensitive articles so excluded from GSP treatment: "textile and

ments of Agriculture, Commerce, Defense, Interior, State, and Treasury; the International Trade Commission; and the Council on International Economic Policy. The TPSC was delegated the responsibility for (1) obtaining information and advice from various agencies and other sources concerning the GSP; and (2) providing an opportunity via the holding of public hearings and such other means as the USTR or a Deputy or the Chairman of the TPSC deemed appropriate, for an interested party to present by oral or written statement his views concerning articles being considered for designation as eligible articles for purposes of the GSP.

By regulation (15 CFR, Ch. XX, Part 2007), on December 31, 1975 (40 Fed.Reg. 60041), the USTR established a procedure by which interested parties could petition the TPSC to request that articles be added to or deleted from the list of GSP eligible articles. The TPSC was delegated the function of reviewing the petitions, including the conduct of any necessary hearings, and of reporting the results of its review to the Deputy Representative and the Trade Representative with a view to possible recommendation of action to the President. The TPSC was also charged with conducting such reviews on its own motion as well as at the beginning of each calendar year in connection with any modification of the GSP required under section 504(c) of the Trade Act.

apparel articles which are subject to textile agreements". 19 U.S.C. § 2463(c)(1)(A).

Specifically, plaintiffs urge—and defendants concede—that man-made fiber flat goods are "textile and apparel articles" within section 2463(c)(1)(A). Moreover, plaintiffs assert that the MFA is a textile agreement within the meaning of section 2463(c)(1)(A) by the plain meaning of the language of the statute as well as by its legislative history. Lastly, plaintiffs argue—and defendants concede—that man-made fiber flat goods are "subject to" the MFA. Essentially, then, plaintiffs seek to exclude man-made fiber flat goods from the list of GSP eligible articles.

On the merits, defendants advance the position that inasmuch as man-made fiber flat goods are not subject to export restraints under any textile agreement, the President's designation of such flat goods for GSP treatment constitutes a reasonable exercise of the President's discretionary authority under the GSP. As noted *supra,* the foregoing rationale is precisely the reason that plaintiffs' attempt at the administrative level to have man-made fiber flat goods removed from the list of eligible articles under the GSP was unsuccessful.

Presently before the Court are: plaintiffs' motion pursuant to rule 12(c) of this Court for judgment on the pleadings; defendants' cross-motion pursuant to rule 12(b) to dismiss contending that: the Court does not possess jurisdiction over this action under 28 U.S.C. § 1581(i); plaintiffs have failed to exhaust their administrative remedies under 19 U.S.C. § 1516 or 15 CFR, Ch XX, Part 2007; and plaintiffs lack standing to prosecute this action. Alternatively, on the merits, defendants have cross-moved for summary judgment pursuant to Rule 56.

**13.** So far as pertinent, § 1581(i) reads:

 (i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section * * *, the Court of International Trade shall have the exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

*Opinion*

Initially, we address the threshold arguments proffered by defendants for disposing of this case without reaching the merits.

### I.

As stated above, defendants have cross-moved to dismiss this action for lack of subject matter jurisdiction under 28 U.S.C. § 1581(i).[13]

■ First, defendants contend that since this action challenges the President's designation of man-made fiber flat goods (when imported from beneficiary developing countries) as eligible for duty-free treatment under the GSP, the action does not arise out of laws of the United States providing for revenue from imports or tonnage, tariffs, duties, fees or other taxes within the purview of section 1581(i). The Court disagrees.

The Trade Act of 1974 (which includes the GSP) provides for tariffs and duties although the GSP program authorizes duty-free entry under certain circumstances. Defendants also ignore the fact that the TSUS provision claimed by plaintiffs to be applicable to the subject merchandise (item 706.39) normally imposes a duty of 20% ad valorem (column 1) and thus provides for "revenue from imports". Since the issue in this case is whether merchandise, normally dutiable under item 706.39, TSUS, is duty-free under that provision pursuant to the GSP, the Court plainly possesses subject matter jurisdiction under 28 U.S.C. § 1581(i)(1) and (4).

■ Second, defendants contend that jurisdiction under 1581(i) is precluded in this case by the availability of jurisdiction

 (1) revenue from imports or tonnage;

    \*    \*    \*    \*    \*    \*

 (4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

under section 1581(b). Subsection (b) of 1581 confers exclusive jurisdiction upon the Court "of any civil action commenced under section 516 of the Tariff Act of 1930 [19 U.S.C. § 1516]".[14] The issue raised by this contention is inextricably intertwined with defendants' argument that plaintiffs have failed to exhaust their administrative remedies.

Citing *United States v. Uniroyal, Inc.*, 69 CCPA 179, 687 F.2d 467 (1982), defendants argue that in order to contest the President's designation of man-made fiber flat goods as eligible articles under the GSP, plaintiffs must proceed by challenging the duty-free treatment accorded a specific entry of such goods by filing a petition with the Customs Service under section 1516, and upon a ruling adverse to such petition, file an action in this Court under 28 U.S.C. § 1581(b). In short, defendants maintain that the Court lacks jurisdiction under section 1581(i) because plaintiffs must seek judicial review of the President's action in accordance with 28 U.S.C. § 1581(b) following the exhaustion of the administrative remedies under section 1516.

Defendants correctly rely upon *Uniroyal* for the propositions that the Court's jurisdiction under section 1581(i) is "expressly 'in addition to the jurisdiction conferred * * by subsections (a)–(h)' ", and that section 1581(i) must "not be used generally to bypass administrative review by *meaningful* protest". 69 CCPA at 184, 687 F.2d at 472 (emphasis added, footnote omitted). However, a corollary of the foregoing is that a party will not be required to pursue a "manifestly inadequate" or inappropriate administrative remedy prior to seeking judicial review. *United States Cane Sugar Refiners' Ass'n v. Block*, 69 CCPA 172, 175, n. 5, 683 F.2d 399, 402, n. 5 (1982), *aff'g* 3 CIT 196, 544 F.Supp. 883 (1982).

*Cane Sugar* involved a challenge to a Presidential Proclamation imposing import quotas on sugar. The Government moved to dismiss arguing that plaintiff should have filed protests pursuant to 19 U.S.C. § 1514, the denial of which could be contested in the Court of International Trade under 28 U.S.C. § 1581(a). This Court, in upholding the President's proclamation on the merits, denied the Government's motion objecting to jurisdiction, and commented on the futility of the administrative remedy: (3 CIT 196, 201, 544 F.Supp. 883, 887):

> Here, the President has issued a proclamation requiring the Customs officials to exclude from entry any sugar in excess of the specified quotas. The Customs officials, who would review a protest claiming that P.P. 4941 is invalid, obviously have no authority to override the presidential proclamation and admit over-quota sugar. Consequently, respecting a ruling on the validity of P.P. 4941, there is no relief which plaintiff may be granted at the administrative level. Under these circumstances, requiring the exhaustion of administrative remedies would be inequitable and *an insistence of a useless formality*. It is well established that exhaustion of remedies will not be required if administrative review would be *futile*. This is particularly the case here where the Customs officials are legally foreclosed from granting the relief sought. [Emphasis added.]

Consequently, in the instant case, plaintiffs could not have resolved the controversy at the administrative level by petitioning Customs in accordance with section 1516. Again, on the merits, the question presented is whether section 2463(c)(1)(A) precludes the President from including man-made fiber flat goods on the list of articles eligible for duty-free entry under the GSP, a matter outside the authority of the Cus-

---

**14.** Section 516 authorizes "domestic interested parties" to file a petition with Customs to challenge "the appraised value, the classification, or rate of duty" imposed upon imported merchandise. 19 U.S.C. § 1516(a)(1). Following the filing of a petition, the Customs Service is to "determine the proper appraised value, classification, or rate of duty", and to "notify the peti- tioner of * * * [its] determination". A petitioner dissatisfied with the determination may file a notice of "desire to contest the appraised value, classification or rate of duty", after which Customs is to provide the petitioner with information on the liquidation to serve as the basis for an action under 28 U.S.C. § 1581(b).

toms Service. It must be emphasized that "[i]t is the President who is authorized to make GSP designations, not the Secretary of the Treasury nor any other Customs officer". *Sybron Corp. v. Carter,* 438 F.Supp. 863, 864 (W.D.N.Y.1977). Clearly, then, the section 1516 procedure would not provide the meaningful administrative review that the *Uniroyal* Court meant to require, but rather such procedure under section 1516 would be futile and inappropriate. *Cf.* this Court's decision in *United States Cane Sugar Refiners' Ass'n v. Block, supra.* See also: *Aleknagik Natives Ltd. v. Andrus,* 648 F.2d 496 (9th Cir.1980) and *Cafferello v. United States Civil Service Commission,* 625 F.2d 285 (9th Cir.1980).

Further, as hereinbefore mentioned and more fully described below, plaintiffs' filing of this action followed more than two years of administrative proceedings involving the TPSC, culminating in a letter from the USTR announcing a "decision to continue GSP duty-free treatment" for man-made fiber flat goods, expressly rejecting plaintiffs' contention that such duty-free treatment violated section 2463(c)(1)(A). Obviously, Congress did not intend that after the exhaustion of the special administrative proceedings under 15 CFR, Ch. XX, Part 2007, the domestic industry would still be required to file a useless petition under section 1516 with Customs, which has no authority to make GSP determinations, before seeking judicial review in this Court.

Defendants' additional assertion that plaintiffs failed to fully avail themselves of the administrative remedies under 15 CFR, Ch. XX, Part 2007 is not borne out by the background of this matter. Plaintiffs' uncontradicted account, supported by affidavit, of the actions they pursued before the USTR includes: (1) the filing of a request with the chairman of the GSP subcommittee of the TPSC to examine and reverse the decision to designate man-made fiber flat

goods as eligible articles under the GSP on the ground that such designation was contrary to section 2463(c)(1)(A); (2) a meeting with the General Counsel of the USTR and others to discuss plaintiffs' position; (3) the filing of written comments in support of the TPSC proposal to remove man-made fiber flat goods from eligibility under the GSP; and (4) following the rejection of the TPSC's proposal, a meeting and correspondence with the USTR concerning this matter. Following these extensive efforts by plaintiffs in the administrative proceedings, Ambassador Brock, as noted above, advised plaintiffs by letter dated April 29, 1983 of the continuation of duty-free treatment under the GSP for man-made fiber flat goods, rejecting plaintiffs' construction of section 2463(c)(1)(A).

In sum, then, plaintiffs commenced this action following more than two years of administrative proceedings before the Office of the USTR and the TPSC, the groups delegated responsibility for the administration of the GSP program. Consequently, defendants' contention that this action must be dismissed due to the Court's lack of jurisdiction under section 1581(i) and plaintiffs' failure to exhaust administrative remedies is overruled. Accordingly, defendants' motion to dismiss the action on these grounds is denied.[15]

## II.

■ The "standing" requirement for actions brought under section 1581(i) is contained in Section 2631(i) of the Customs Courts Act of 1980, 28 U.S.C. § 2631(i), providing:

> Any civil action of which the Court of International Trade has jurisdiction, other than an action specified in subsections (a)–(h) of this section may be commenced in the Court by *any person adversely affected or aggrieved by agency action*

---

**15.** Defendants' argument that the filing by plaintiffs of "comments" in support of the TSPC's proposal was insufficient to exhaust their remedies in light of 15 CFR § 2007.1 (which details the information required in a petition initiated by an "interested party") is unpersuasive. Plainly, the filing of a petition would have been pointless given the TPSC's negative decision on its own proposal.

*within the meaning of Section 702 of title V."* (Emphasis added.)

Section 702 of title 5 (the Administrative Procedure Act) reads:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof.

The courts have utilized a two-pronged test in assessing whether a plaintiff has such "standing" as one "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." *See, e.g., Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 152–56, 90 S.Ct. 827, 829–31, 25 L.Ed.2d 184 (1970). The first test is "whether the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise." *Id.* at 152, 90 S.Ct. at 829. The second test is whether "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute" involved. *Id.* at 153, 90 S.Ct. at 829.

Defendants urge several grounds in support of their contention that plaintiffs lack standing to prosecute this action: plaintiffs' claim, based upon section 2463(c)(1)(A), is insufficient since plaintiffs "have not alleged injury to themselves"; plaintiffs' allegations of actual injury to their members are "too generalized"; plaintiffs are not within the "zone of interests protected by a statute or constitutional guarantee"; and plaintiffs do not fall within the scope of 19 U.S.C. § 1677(9)(D) or (E). These contentions may be summarily disposed of.

First, defendants' assertion that "plaintiffs have not alleged injury to themselves" (brief at 29) is unavailing inasmuch as associations, such as LLGMA and the Union, are permitted to appear as representatives of their members. *See Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 341–45, 97 S.Ct. 2434, 2440–42, 53 L.Ed.2d 383 (1977); *Warth v. Seldin,* 422 U.S. 490, 510–511, 95 S.Ct. 2197, 2211,

45 L.Ed.2d 343 (1975); *Nat'l Automatic Laundry and Cleaning Council v. Shultz,* 443 F.2d 689, 693–94 (D.C.Cir.1971) and cases cited. More, plaintiffs have alleged in their complaint that defendants' actions in maintaining man-made fiber flat goods on the GSP list have caused injury to plaintiffs' members by adversely affecting their sales, profitability, employment and other indicators of the economic health of the domestic industry (Complaint, ¶ 19). This adverse effect is supported by an uncontradicted affidavit of Mr. Robert T. Rolfs, the President of Amity Leather Products Co., one of LLGMA's members.

Second, defendants claim that plaintiffs' allegations of injury to their members are "too generalized" to confer standing (brief at 29) is without merit as the duty-free imports under the GSP would most immediately impact the competing domestic manufacturers and their labor forces, and obviously would not "be shared by a large number of citizens in a substantially equal measure", as urged by defendants. Defendants' concern that plaintiffs' grievances must be "substantiated" (brief at 29 n. 16) is addressed by Mr. Rolf's affidavit, *supra,* which details the injury alleged. In any event, "[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin,* 422 U.S. at 501, 95 S.Ct. at 2206. *See also Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969).

Third, defendants' assertion that "plaintiffs have failed to point to any statute which seeks to protect their interests", and therefore, are "not within the zone of interests which is protected by a statute or constitutional guarantee" (brief at 30) cannot stand in light of plaintiffs' predicate for bringing this action. As stated above, the central issue in this litigation is the validity under section 2463(c)(1)(A) of the President's designation of man-made fiber flat goods as eligible for GSP treatment. Sec-

tion 2463(c)(1)(A) prohibits the President from including in the GSP list "textile and apparel articles which are subject to textile agreements." Obviously, section 2463(c)(1)(A) is intended specifically to protect domestic textile and apparel companies and their workers from duty-free imports of "textile and apparel articles which are subject to textile agreements." If the companies and workers that plaintiffs represent are not "within the zone of interests which is protected" by section 2463(c)(1)(A), it is difficult to imagine who would be so protected.

■ Lastly, defendants' contention that plaintiffs have not demonstrated they are within the class of interested parties to question the duty rate imposed (or not imposed) upon imports within the meaning of 19 U.S.C. § 1677(9)(D) or (E) as required by 19 U.S.C. § 1516 is totally lacking in merit. As we have seen, plaintiffs in this case were not required to, and have not, proceeded under 19 U.S.C. § 1516, and hence the requirements of that provision are irrelevant.[16]

In light of the foregoing, defendants' cross-motion to dismiss on the basis of standing is denied.

### III.

Having concluded that the Court possesses jurisdiction of this action pursuant to 28 U.S.C. § 1581(i), that plaintiffs have ex-

hausted their administrative remedies and have standing to prosecute this action, we reach the merits. As explained above, 19 U.S.C. § 2463(c)(1) provides that the President may not designate an article as eligible for GSP treatment if it falls within specified categories of "import-sensitive" articles; and the first such category of "import-sensitive articles" so excluded from GSP treatment comprises "textile and apparel articles which are subject to textile agreements".[17] The issue presented, therefore, is whether the President's designation of man-made fiber flat goods as eligible articles under the GSP is precluded by 19 U.S.C. § 2463(c)(1)(A).

### A.

■ As heretofore observed, there is no dispute that man-made fiber flat goods are "textile and apparel articles" within the meaning of section 2463(c)(1)(A), and that such flat goods are "subject to" the MFA.[18] Hence, the crux of the dispute between the parties revolves around the question of whether the MFA is a "textile agreement" within the meaning of section 2463(c)(1)(A). If this question is answered in the affirmative, plaintiffs' contention that man-made fiber flat goods are precluded from GSP treatment under section 2463(c)(1)(A) must be sustained. However, if the answer is in the negative, the President's designation of

**16.** In any case, defendants are incorrect in claiming that a petitioner under section 1516 must meet the "interested party" requirements of 19 U.S.C. § 1677(9)(D) or (E) (pertaining to review of antidumping in countervailing duty determinations), which as defendants note, refer to the requirement that the members of a plaintiff association or union produce a "like product". Section 1516 was amended in the Customs Courts Act of 1980 to eliminate this reference to 19 U.S.C. § 1677(9), a reference that was added when 19 U.S.C. § 1516 was revised in the Trade Agreements Act of 1979 (*See* section 1001, Pub.L. 96–39) to include a separate "interested party" definition. See 19 U.S.C. § 1516, as amended in section 607(a), Pub.L. 96–417.

**17.** The statute reads in relevant part:

**Articles which may not be designated as eligible articles.** (1) The President may not

designate any article as an eligible article under subsection (a) if such article is within one of the following categories of import-sensitive articles—

(A) textile and apparel articles which are subject to textile agreements, * * *

**18.** Article 12 of the MFA provides:

"For the purpose of this Arrangement, the expression 'textiles' is limited to tops, yarns, piece goods, made-up articles, garments and *other textile manufactured products (being products which derive their chief characteristic from their textile components) of cotton, wool, man-made fibers, or blends thereof, in which any or all of those fibers in combination present either the chief value of the fibers or 50 percent or more by weight (or 17 percent or more by weight of wool) of the product.*" (Emphasis added.)

man-made fiber flat goods as eligible articles under the GSP must be upheld.

Plaintiffs predicate their argument that the MFA is a textile agreement within the purview of section 2463(c)(1)(A) on the plain meaning of the statute, its purpose, and legislative history. Defendants, on the other hand, insist that section 2463(c)(1)(A) confers broad discretionary authority on the President that is not reviewable by the courts; and further, that based upon "consistent" administrative interpretation of the statute, the term "textile agreements" in section 2463(c)(1)(A) embraces only bilateral textile agreements that impose restraints on imports of specific textile products.[19]

This Court concludes that plaintiffs' construction is correct.

Fundamentally, of course, courts are ordinarily duty bound to interpret statutes in accordance with their plain meaning; and the plain meaning of a statute must prevail in the absence of legislative history clearly indicating a Congressional intent differing from that manifested by the language used. *Zenith Radio Corp. v. United States*, 1 CIT 180, 184, 509 F.Supp. 1282, 1286 (1981), and cases cited. More recently, in *Toyota Motor Sales, U.S.A., Inc. v. United States*, 7 CIT ——, Slip Op. 84–38 (April 10, 1984), the Court cogently reiterated the rule of statutory construction that is controlling here:

> [W]here Congress in plain language has expressed its intention, and the legislative history does not demonstrate a contrary purpose, this court is bound to follow the statutory provision as written. *Schramm v. Department of Health & Human Services*, 682 F.2d 85, 91 (3d Cir.1982). The Supreme Court has in

fact warned that "[g]oing behind the plain language of a statute in search of a possibly contrary congressional intent 'is a step to be taken cautionly' even under the best circumstances." *American Tobacco Co. v. Patterson*, 456 U.S. 63, 75, 102 S.Ct. 1534, 1540, 71 L.Ed.2d 748 (1982) (quoting *Piper v. Chris-Craft Industries*, 430 U.S. 1, 26, 97 S.Ct. 926, 941, 51 L.Ed.2d 124 (1977)). Indeed, "[a]bsent a clearly expressed legislative intention to the contrary, [the] language [of the statute] must ordinarily be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). *See Shields v. United States*, 698 F.2d 987, 989 (9th Cir. 1983).

Equally well settled is the rule that "[u]nquestionably the courts, in interpreting a statute, have some 'scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning would lead to absurd results ... or would thwart the obvious purpose of the statute.' * * * But *it is otherwise 'where no such consequences would follow and where ... it appears to be consonant with the purposes of the Act ....'* ". *Commissioner v. Brown*, 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965) (emphasis added), *quoting, Helvering v. Hammel*, 311 U.S. 504, 510–11, 61 S.Ct. 368, 371, 85 L.Ed. 303 (1940).

Here, plaintiffs—properly—rely upon the plain meaning of section 2463(c)(1)(A) in arguing that the term "textile agreements" as used in that statute means just what it says, and since the MFA is an agreement covering textiles, it is within the purview of section 2463(c)(1)(A).[20] This Court is un-

19. Currently, neither the MFA nor any other agreement entered into by the United States controls or restrains imports of flat goods covered by item 706.39, TSUS. Recent bilateral agreements (defendants' collective exhibit 2) either specifically exclude man-made fiber flat goods from the textile products covered by the agreements or omit references to the correlation number or category assigned to such flat goods.

20. Although the MFA has the word "Arrangement" in its title, there is no dispute that the MFA is an "agreement" in form and operation. For example, following its Preamble the MFA states that "THE PARTIES TO THIS ARRANGEMENT have agreed" to the following 17 Articles of the MFA. Moreover, the parties, including the United States, each formally accepted the MFA by signature or otherwise, see 25 UST 1001, 1054–61, TIAS 7840, and the MFA provi-

able to agree with defendants' narrow reading of the language "textile agreements" in section 2463(c)(1)(A) as restricting the term to only bilateral textile agreements which impose restraints on imports of specific textile products.

### B.

Obviously, based upon the plain and unambiguous language of section 2463(c)(1)(A), there is no support for the restrictive construction urged by defendants and this Court is not required to go further. However, even if the language of section 2463(c)(1)(A) were not as clear as it is, the legislative history supports beyond peradventure of doubt plaintiffs' construction that the MFA is a textile agreement within the purview of section 2463(c)(1)(A). Statutory clarity, of course, does not bar a Court's consideration of legislative history. *Zenith Radio Corp. v. United States,* 3 CIT at 184, 509 F.Supp. 1285, and cases cited.

The Trade Act of 1974, which included the GSP legislation in Title V, was passed by the Senate on December 13, 1974. However, during the previous month when the Senate Finance Committee reported on this legislation, there was no provision specifically restricting the President's authority to designate "import-sensitive" items as "eligible articles" under the GSP program. *See* S.Rep. No. 1298, 93rd Cong.2d Sess. 223–24 (1974), U.S.Code Cong. & Admin. News 1974, p. 7186. Responding to concern on this point, the Senate Finance Committee sought and received assurances from the Administration that "sensitive products would be excluded from receiving preferences." *Id.* at 224, U.S.Code Cong. & Admin.News 1974, p. 7353. Specifically, the Senate Finance Committee received a letter dated November 7, 1974, addressed to Senator Russell B. Long, Chairman of the Finance Committee, from Ambassador W.D. Eberle, the President's Special Representative for Trade Negotiations. This letter was published in the body of the Senate

Finance Committee Report, and reads in part as follows:

The Hon. Russell B. Long,

Chairman, Committee on Finance, United States Senate,

Washington, D.C.

Dear Mr. Chairman: In his message to Congress accompanying submission of the Trade Reform Act of April 10, 1973, former President Nixon specified certain categories of import-sensitive products intended to be excluded from a generalized system of preferences for articles from eligible developing countries.

In response to questions concerning this Administration's commitment to such exclusions, *I reaffirm the intention of the Executive Branch to exclude from tariff preferences textile and apparel products which are subject to textile agreements ...* and other items which may be considered import-sensitive in the context of generalized preferences. *Id.* (Emphasis added).

It should be stressed that this letter refers to the exclusion from the GSP program of "textile and apparel products which are subject to textile agreements," *language identical* to that presently in section 2463(c)(1)(A).

Although Ambassador Eberle's letter used the plural expression "subject to textile agreements", the important point is the Senate Finance Committee's expressed understanding of this language in its summary of Mr. Eberle's letter in the Committee Report immediately preceding its quotation of this letter:

The Committee has received assurances that sensitive products would be excluded from receiving preferences. Ambassador Eberle's letter, reprinted below, indicates that *textiles and apparel products subject to the international textile agreement would be excluded,* along with * * * other sensitive items. *Id.* (Emphasis added.)

There can be little doubt that the MFA was the "international textile agreement" to which the Senate Finance Committee

sions plainly represent undertakings or commit-

ments by these parties.

**1426**

referred in its 1974 report.[21] As indicated *supra*, the MFA had been agreed to by the United States in 1973 following a lengthy process of negotiation with over 60 nations. Against this background, and in light of the prominence of the MFA as an international textile agreement in 1974, the reference in the Senate Committee Report that textile and apparel products "subject to the international textile agreement would be excluded" from the GSP could only have referred to textiles and apparel products "subject to" the MFA. Thus, defendants' understanding that the language in section 2463(c)(1)(A) "subject to textile agreements" does not encompass the MFA is not only contrary to the plain meaning of the statute, but is also contrary to the statute's legislative history.

**C.**

Addressing defendants' contention that the President has determined that the subject man-made fiber flat goods are not "import sensitive", it need only be pointed out that by the express language of section 2463(c)(1)(A), *Congress has made a legislative judgment* that *all* "textile and apparel articles which are subject to textile agreements" are to be excluded from the GSP as "import sensitive" articles.[22] Such legislative judgment is, of course, conclusive on the Executive.

**D.**

Nor is there any merit in defendants' contention that the language in section 2463(c)(1)(A) was intended to confer broad discretionary authority on the President. On the contrary, as indicated *supra*, in section 2463(c)(1)(A) Congress intended to restrict the President's exercise of discre-

---

**21.** Indeed, earlier in 1974 Senator Strom Thurmond had explained to the Senate that the MFA "is the most encompassing international textile trade agreement ever reached." 120 Cong.Rec. 230 (1974).

**22.** In some subparagraphs of section 2463(c)(1), Congress expressly applied the exclusion from the GSP to articles described as "import sensitive" (*e.g.* "import sensitive electronic articles", covered by section 2463(c)(1)(C)). However, in

tion under the GSP in the case of certain specified "import-sensitive" articles such as "textile and apparel articles which are subject to textile agreements".

**E.**

Finally, defendants' contention that the administrative interpretation in this case is entitled to deference, is definitively answered by the Supreme Court in *Federal Election Comm'n. v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 31–32, 102 S.Ct. 38, 41–42, 70 L.Ed.2d 23 (1981):

> "The interpretation put on the statute by the agency charged with administering it is entitled to deference * * * but *the courts are the final authorities on issues of statutory construction.* They must reject administrative constructions of the statute * * * that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement." (Emphasis added; citations omitted.)

**F.**

In summary, the plain meaning of the statute and the plain Congressional intent, as evidenced by the legislative history, establish that section 2463(c)(1)(A) precludes the granting of duty-free treatment under the GSP to textile products subject to the MFA. Under these circumstances, this Court is compelled to find the President's designation of flat goods covered by item 706.39, TSUS (previously item 706.27, TSUS) as eligible articles under the GSP was contrary to law, and the continued refusal to remove those products from the list of GSP eligible articles is similarly contrary to law.

---

three instances, including subparagraph (A), Congress did not include any such "import sensitive" limitation. Thus, the conclusion is inescapable from the term "import sensitive" in section 2463(c)(1) that Congress intended in subparagraph (A) *all* "textile and apparel articles which are subject to textile agreements" should be regarded as "import sensitive" for purposes of section 2463(c)(1)(A).

Accordingly, it is hereby adjudged and ordered:

1. Man-made fiber flat goods (flat goods, of textile materials except cotton, covered by item 706.39, TSUS) are not eligible for duty-free treatment under the GSP.

2. The President acted contrary to law in designating by Executive Order 12302 the flat goods covered by item 706.39, TSUS as "eligible articles" under the GSP, and in failing and refusing to remove man-made fiber flat goods from the list of "eligible articles" receiving duty-free treatment under the GSP.

3. Plaintiffs' motion for judgment on the pleadings (summary judgment) is granted.[23]

4. Defendants' cross-motion to dismiss, or alternatively for summary judgment, is denied.

5. Defendants are directed to forthwith remove from the list of eligible articles under the GSP man-made fiber flat goods (flat goods, of textile materials except cotton, covered by item 706.39, TSUS).

Judgment will be entered accordingly.

---

**23.** Since matters outside the pleadings were presented by plaintiffs in support of their motion for judgment on the pleadings, plaintiffs' motion must, under Rule 12(c), be treated as one for summary judgment and disposed of as provided in Rule 56.