NATIONAL CORN GROWERS ASSOCIATION; NEW ENERGY CO. OF INDIANA; ARCHER DANIELS MIDLAND CO.; OHIO FARM BUREAU FEDERATION; AND A.E. STALEY MANUFACTURING CO., PLAINTIFFS *v.* JAMES A. BAKER III, SECRETARY, U.S. DEPARTMENT OF THE TREASURY; JOHN M. WALKER, JR., ASSISTANT SECRETARY, U.S. DEPARTMENT OF THE TREASURY; WILLIAM VON RAAB, COMMISSIONER, U.S. CUSTOMS SERVICE; AND, UNITED STATES, DEFENDANTS

Court No. 85-8-01151

(Decided September 20, 1985)

*Williams and Connolly* (*Aubrey M. Daniel III* and *Stephen L. Urbanczyk* on the motion) for the plaintiffs.

*Richard K. Willard,* Acting Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Kenneth N. Wolf* and *Joseph I. Liebman* on the motion) for the defendants.

*McDermott, Will & Emery* (*R. Sarah Compton* and *Kurt J. Olson* on the motion) for Amicus Curiae, RAJ Chemicals.

CARMAN, *Judge:* The action before the Court is plaintiffs' motion for a preliminary injunction ordering the Commissioner of Customs to require the posting of bonds and to delay liquidation with respect to entries of fuel ethanol blends made after August 2, 1985. Defendant government cross-moves for dismissal, arguing that this Court lacks jurisdiction over the action and plaintiffs lack standing to bring it. Defendant's motion to dismiss denied. Plaintiffs' motion for preliminary injunction is denied.

## BACKGROUND

In 1978, Congress exempted motor fuels blended with ethanol from the federal excise tax on fuels. Act of Nov. 9, 1978, Pub. L. No. 95-618, Title II, Part III, § 221(a)(1), 92 Stat. 3185 (codified as amended at 26 U.S.C.S. § 4081 (Law. Co-op. 1980 & Supp. 1985)). When the Internal Revenue Service ruled that imported ethanol qualified for this exemption, Congress imposed a customs tariff on ethyl alcohol imported as a fuel with the insertion of item 901.50 into the Tariff Schedules of the United States (TSUS). *See* Omnibus Reconciliation Act of 1980, Pub L. No. 96-499, § 1161, 94 Stat. 2695 (1980). That tariff rate is currently 60 cents per gallon, which is in addition to the three percent *ad valorem* duty on ethyl alcohol for non-beverage purposed under item 427.88, TSUS. *See* Appendix to the Tariff Schedules, part 1, subpart A, headnote 1, TSUSA (1985).

On September 12, 1984, the United States Customs Service (Customs) issued an unpublished letter to the Honorable Diego C. Ascencio, United States Ambassador to Brazil (No. 074590), stating

that mixtures containing 80–90% ethanol would be classified under TSUS 432.10, which carries a tariff rate of 5% *ad valorem.* Customs apparently issued additional similar rulings through June, 1985. Plaintiffs, who represent domestic industries connected with the production of ethanol, became aware of these rulings, and on July 3, 1985, petitioned Customs to revoke these rulings and classify the ethanol mixtures under TSUS 901.50.

On August 2, 1985, Customs revoked these rulings with respect to entries made after August 2, 1985. Customs notified importers of the revocation, stating that it would, however, consider information relevant to each importer's reliance on the earlier rulings before imposing the higher tariff. On August 27, 1985, Customs further notified affected importers that the higher tariff would be imposed on *all* entries made after November 1, 1985 (90 days after the date of revocation). On September 3, 1985, plaintiffs filed a complaint with this court and on September 9 moved for a temporary restraining order (TRO) and a preliminary injunction ordering the Commissioner to require the posting of bonds and to delay liquidation with respect to all entries of ethanol mixtures made after August 2, 1985. Defendant followed with a motion to dismiss for lack of jurisdiction and lack of standing. At the conclusion of oral argument by telephone on September 11, 1985, this Court denied the motion for a TRO. A hearing on the motion for a preliminary injunction was held on September 13, 1985.[1] This opinion is now issued in connection with the Court's order of September 16, 1985, Denying the plaintiffs' motion for a preliminary injunction.

The issues before the Court are: (1) whether plaintiffs have standing; (2) whether the Court has jurisdiction of this action; (3) whether the Court should require plaintiffs to exhaust their administrative remedies; and, (4) whether plaintiffs have carried their burden of proving the elements necessary for granting a preliminary injunction.

## OPINION

### I. *Standing*

To have standing under Article III of the Constitution, a plaintiff must show actual or threatened injury which is within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Valley Forge Christian College* v. *Americans United for Separation of Church and State,* 454 U.S. 464, 475 (1982), quoting *Association of Data Processing Service Orgs.* v. *Camp,* 397 U.S. 150, 153 (1970). Plaintiffs here are connected with the domestic production of ethanol. They are threatened with economic injury if

---

[1] Plaintiffs, defendant, and amicus all briefed the issues and prepared for the hearing on a short schedule. The Court appreciates the thoroughness of the work done by respective counsel under these circumstances, and compliments them on the quality of their briefs and oral presentations. The Court also thanks those who were unable to make oral presentations at the hearing, but who submitted post-hearing briefs.

ethanol is imported at a rate of duty approximately 58 cents per gallon below the rate set by Congress. Because Congress established the tariff under item 901.50, TSUS to offset tax exemptions available to imported ethanol, thus protecting domestic producers, plaintiffs' threatened injury is arguably within the zone of interest Congress sought to protect by the tariff. *See* 126 Cong. Rec. 31,709.

## II. *Jurisdiction and Exhaustion of Administrative Remedies*

Because the issues of the Court's jurisdiction and the requirement that administrative remedies be exhausted are so closely intertwined, they are discussed together. Plaintiffs contend that this Court has jurisdiction under 28 U.S.C. § 1581(i) (1982).[2] Defendant maintains that section 1581(i) is not available to plaintiffs who may come to this Court under sections 1581(a)–(h) by first exhausting administrative remedies. Although plaintiffs may not use section 1581(i) to create a new cause of action, it is clear that this Court should exercise jurisdiction under section 1581(i) when the usual route through administrative action would result in a "manifestly inadequate" remedy. *Luggage and Leather Goods Manufacturers of America, Inc.* v. *United States,* 7 CIT 258, 588 F.Supp. 1413, 1420 (1984); *United States Cane Sugar Refiners' Assn.* v. *Block,* 3 CIT 196, 544 F.Supp. 884, *aff'd,* 69 CCPA 172, 683 F.2d 399 (1982). In this case plaintiffs may well have been foreclosed from obtaining any judicial remedy had they pursued a protest to Customs.

The agency action that plaintiffs seek to restrain is to take place within a limited time frame. When Customs revoked its prior rulings on August 2, and created the possibility of exemptions from the revocation, it was unclear whether there was any actual threat of importers obtaining waivers. If after the threat materialized plaintiffs protested to Customs and then took an appeal to this court, the November 1 expiration date would have been at hand and plaintiffs might have lost their opportunity for meaningful judicial review. Under the circumstances and the facts of this case, the Court holds it is appropriate to exercise jurisdiction under § 1581(i) for the limited purpose of hearing plaintiffs application for the extraordinary relief of a preliminary injunction.

---

[2] Section 1581(i) provides:

In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any Law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

III. *The Motion for a Preliminary Injunction*

A preliminary injunction is an extraordinary remedy, *Sanho Collections, Ltd.* v. *Chasen,* 1 CIT 6, 11, 505 F. supp. 204, 208 (1980), and will be granted only when the movant carries its burden of proving each of four necessary elements:

1. A threat of immediate irreparable harm;
2. That the public interest would be better served by issuing than by denying the injunction;
3. A likelihood of success on the merits; and
4. That the balance of hardship on the parties favored appellant.

*S.J. Stiles Assoc., Ltd.* v. *Snyder,* 68 CCPA 27, C.A.D. 1261, 646 F.2d 522, 525 (1981).

To prove immediate and irreparable harm, plaintiff must show that a viable threat of serious harm exists. *S.J. Stiles,* 68 CCPA at 30, 646 F.2d at 525. "A preliminary injunction will not issue simply to prevent a mere possibility of injury, even where the prospective injury is great." *Id.* Plaintiffs here have failed to prove any specific injury to either domestic ethanol producers or corn growers. Plaintiffs maintain that as much as 40 million gallons of ethanol mixture may enter at the lower tariff because of Customs' actions.[3] They are unable, however, to offer concrete evidence of how that will harm them.[4] Although plaintiffs stated that perhaps as much as 40 million gallons of ethanol were imported at the lower rate during 1984, Memorandum in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction, at 13 n.15 ("Plaintiffs' Memorandum"), they failed to offer adequate evidence to show how those imports had adversely affected their economic interest. Without more tangible evidence, the question of harm resulting from possible importations of the same amount between August 2 and November 1, 1985, is speculative. Moreover, defendants produced expert testimony to the effect that 40 million gallons, imported into a market that will consume 650 million gallons in 1985, will have

---

[3] Apparently the exact amount of ethanol that will enter at the lower rate is impossible to determine in advance. Representatives of the government stated in the hearing before this Court that as many as 183 million gallons could enter pursuant to extensions currently granted by Customs, but that a realistic estimate of the amount that actually will enter is 30–50 million gallons. Plaintiffs in their moving papers estimated that 40 million gallons would enter.

[4] For example, plaintiffs contend that importation of ethanol without the 60 cent special tariff will irreparably damage the domestic ethanol industry. In support, plaintiffs submitted affidavits with their brief. One stated that the importations "would likely disrupt the existing market" and "would almost certainly penetrate established markets for domestic ethanol." (Plaintiffs' Memorandum, Exhibit R). Another stated simply that these importations "will seriously disrupt the existing market and cause immediate and substantial irreparable harm" to plaintiffs. (Plaintiffs' Memorandum, Exhibit S). A final affidavit related, somewhat more concretely, that the "arrival of the tariff-exempt ethanol-toluene blend drove" affiant from the North Carolina market. (Plaintiffs' Memorandum, Exhibit T). These affidavits make statements that are simply conclusory, without offering any specific factual information to show the certainty or the extent of plaintiffs' anticipated injury. Moreover, plaintiffs proffered no persuasive expert opinion to establish the likelihood of injury.

Plaintiffs also contend that the imports will displace domestic corn production. The affidavit they offered to prove this contention, however, stated only that "Ethanol blends imported without payment of the lawful duty threaten to displace domestic production." (Plaintiffs' Memorandum, Exhibit Q). The affidavit detailed the likely effect on corn prices *if* such displacement occurs, yet it gave no concrete factual information to show that displacement *will* occur. Plaintiffs' assertions that they will be irreparably harmed are speculative at best.

only a de minimis impact on the price of domestic ethanol or corn. Plaintiffs' vague assertions that ethanol imports between August 2 and November 1, 1985, at the lower tariff rate, will depress ethanol and corn prices are simply insufficient to sustain plaintiffs' burden of proving immediate and irreparable harm.

The public interest in this case is the collection of import duties. *Cf. Smith-Corona Group, Consumer Products Division* v. *United States,* 1 CIT 89, 507 F.Supp. 1015 (1980) (public interest in collecting countervailing duties). Although the public always has an interest in the collection of lawful duties, that interest is not compelling in this case when balanced against the other factors. Further, while plaintiff has shown a possibility of success on the merits, there are arguments cutting both ways. Customs relied on 19 C.F.R. § 177.9(d)(2) in prospectively applying its revocation of the ruling letters. That section, however, provides only that the revocation of a ruling letter will not be applied retroactively if certain conditions are met.[5] Thus, Customs may have acted outside the scope of its own regulations in granting the extension.

On the other hand, Customs may have properly acted within its broad scope of authority to administer the customs laws, *See* 19 U.S.C. § § 3, 1624 (1982). Although it is questionable whether such authority extends to granting a 90-day grace period based on reliance upon a revoked ruling (*compare* 19 U.S.C. § 1315(d) (1982), which allows only a 30-day period before a change in an established and uniform practice is effective), this a novel issue and plaintiffs have failed to convincingly establish that they are *likely* to prevail on the merits.

Finally, plaintiffs have failed to show that the balance of harm weighs in their favor. As noted, the injury to plaintiffs' interests is speculative. On the other side, importers may be greatly injured if they are required to post large bonds or if liquidation of their entries is delayed. Posting bonds would involve great expense to the importers, while delay of liquidation would force them to carry an unknown liability until a final determination on the merits was reached.

Although plaintiffs might ultimately prevail on the merits, that is insufficient reason to grant a preliminary injunction. Plaintiffs have failed to show the existence of the other necessary elements, most particularly immediate and irreparable harm.

---

[5] 19 C.F.R. § 177.9(d)(2) provides:
*Effect on modification or revocation of ruling letters.* The modification or revocation of a ruling letter will not be applied retroactively with respect to the person to whom the ruling was issued, or to any person directly involved in the transaction to which that ruling related, *Provided:*
    (i) The request for a ruling contained no misstatement or omission of material facts,
    (ii) The facts subsequently developed are not materially different from the facts on which the ruling was based,
    (iii) There has been no change in the applicable law,
    (iv) The ruling was originally issued with respect to a prospective transaction, and
    (v) All of the parties involved in the transaction acted in good faith in reliance upon the ruling and retroactive modification or revocation would be to their detriment.
Nothing in this paragraph will prohibit the retroactive modification or revocation of a ruling with respect to a transaction which was not prospective at the time the ruling was issued, inasmuch as such a transaction was not entered into in reliance on a ruling from the Headquarters Office or the Regional Commissioner, Region II.