**PPG INDUSTRIES, INC., Plaintiff,**

**v.**

**UNITED STATES, Defendant,**

**and**

**Asahi Glass Co., Ltd., Central Glass Co., Ltd., Nippon Sheet Glass Co., Ltd., Intervenors–Defendants.**

Court No. 81–07–00986.

United States Court of International Trade.

Dec. 29, 1988.

See also 702 F.Supp. 917.

Law Offices of Eugene L. Stewart, Eugene L. Stewart, Terence P. Stewart and Jeffrey S. Beckington, Washington, D.C., for plaintiff.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Velta A. Melnbrencis, New York City, for defendant.

Tanaka Walders & Ritger, H. William Tanaka, Lawrence R. Walders and Patrick F. O'Leary, Washington, D.C., for intervenors-defendants.

*Memorandum & Order*

AQUILINO, Judge:

In this action challenging a determination of the International Trade Administration, U.S. Department of Commerce ("ITA") *sub nom. Clear Plate and Float Glass from Japan; Final Results of Administrative Review and Revocation of Anti-dumping Finding,* 46 Fed.Reg. 32,-926 (June 25, 1981), plaintiff's motion for judgment upon the agency record pursuant to CIT Rule 56.1 has been reassigned to the undersigned for decision.

That motion points to a finding by the Secretary of the Treasury under the Anti-dumping Act of 1921 that clear plate and float glass from Japan was being, or was likely to be, sold at less than fair value. *See Clear Plate and Float Glass from Japan,* 36 Fed.Reg. 9,009 (May 18, 1971). Thereafter, Treasury published a tentative determination to revoke the dumping finding. *See* 42 Fed.Reg. 9,740 (Feb. 17, 1977). The reasons given for this proposition were that the respondents had not sold their products at less than fair value for a period of two years from the date of the finding and that they had submitted written assurances that future sales of clear plate and float glass to the United States would not be made at less than fair value.

The petitioner (plaintiff herein) thereupon requested a hearing with Treasury, at which it submitted data gathered and analyzed by a Japanese market-research firm and purporting to show dumping by the respondents during the periods reviewed by Treasury. In response to the submission, Treasury requested information about that firm in order to facilitate Customs

Service verification. The petitioner was apparently unable to comply with the request, prompting Treasury to take the position that Customs could not proceed with an investigation. *See* Complaint, Exhibit L. No additional appraisement instructions were ever issued, however, nor did Treasury revoke the original order.

The Trade Agreements Act of 1979 became effective as of January 1, 1980, thereby transferring responsibility for administration of the antidumping law from Treasury to the ITA, which published notice of an administrative review of the original order, as required by the act, 19 U.S.C. § 1675(a)(1). The preliminary results of this review were:

> ... All sales to the United States by Asahi Glass Co., Ltd., and Nippon Sheet Glass Co., Ltd. were made at not less than fair value from July 1, 1973 through February 17, 1977. All sales by Central Glass Co., Ltd. were made at not less than fair value from January 1, 1975 through February 17, 1977. There is no indication of sales at less than fair value by these three companies since that time.

*Clear Plate and Float Glass from Japan; Preliminary Results of Administrative Review of Antidumping Finding and of Tentative Determination to Revoke,* 46 Fed.Reg. 10,970, 10,971 (Feb. 5, 1981). This tentative determination to revoke also stated that, in compliance with 19 C.F.R. § 353.54(e), the three named firms had agreed in writing to an immediate suspension of liquidation and reinstatement of the antidumping-duty order if an indication of sales at less than fair value were to develop. Interested parties were offered an opportunity to be heard.

A disclosure conference was held with the petitioner, which challenged the ITA's use of weighted-average net-back prices for the period of review and its use of factory net-back methods for calculating home-market prices. The agency provided revised sample calculations, which still showed the absence of sales at less than fair value. The plaintiff took issue with them, questioning in particular the treatment of packing costs, inland freight, and sales-agent commissions.

In its published final results of the administrative review, the ITA acknowledged that it had recalculated its preliminary findings according to the comments offered by petitioner's counsel at the disclosure conference, but the agency nevertheless concluded that sales at less than fair value were not made by Central Glass during the period January 1, 1975 to February 17, 1977, or by Asahi or Nippon during the period July 1, 1973 to February 17, 1977. Based on those results, the ITA revoked the antidumping-duty order on clear plate and float glass from Japan.

*Discussion*

The plaintiff states in support of its motion for judgment on the agency record that

> the way in which the ITA conducted its first administrative review of the 1971 dumping determination ... reveals a fundamental misreading ... of the Tariff Act of 1930, as amended by the Trade Agreements Act of 1979, and of section 751 of the Act especially. In terms of what periods of time and what entries of the subject merchandise must be scrutinized in its annual administrative review, whether its duty to investigate encompasses a requirement seriously to consider and verify information supplied by the United States domestic industry, and what constitutes a meaningful opportunity for the domestic industry to be heard and to participate actively in the review, the ITA would endow itself with an extensive discretion which in plaintiff's opinion Congress did not see fit to bestow upon the administering authority when it created section 751. To the contrary, section 751 in plaintiff's judgment demands a much more rigorous and extensive review than was made by the ITA and one in which plaintiff was entitled to and ought to have had a full hearing.[1]

---

**1.** Memorandum in Support of Plaintiff's Motion for Review of Administrative Determination Upon Agency Record, pp. 11–12.

Plaintiff's first argument focuses on the ITA's failure to examine all unliquidated entries of clear plate and float glass imported between the date of Treasury's tentative determination to revoke and the commencement of the section 751 review. In other words, the plaintiff contends that the ITA is bound both by 19 U.S.C. § 1675 and 19 C.F.R. §§ 353.53–.54 to review all shipments occurring after February 17, 1977 through the anniversary date of the initial order, May 18, 1980, when questionnaires were first distributed to the Japanese firms by the ITA. The plaintiff also alleges that the ITA disregarded section 353.54(a) by not determining the likelihood of a resumption of sales at less than fair value.

While contending that its choice of time periods is consistent with its discretionary authority and supported by substantial evidence, the defendant also opposes plaintiff's position on the grounds that it had not been raised first at the administrative level.

*United States v. Tucker Truck Lines,* 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952), states that "courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." The Customs Courts Act of 1980 provides that, in an action such as this, "the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). This judicial discretion should not be exercised "where the obvious result would be a plain miscarriage of justice"[2]. Indeed, the

Court of International Trade has found exceptions to the exhaustion doctrine when requiring exhaustion would be futile or an insistence on a useless formality. *See, e.g., Rhone Poulenc, S.A. v. United States,* 7 CIT 133, 135, 583 F.Supp. 607, 610 (1984). The Court has also declined to require that plaintiffs pursue channels which could not lead to relief or pursue "manifestly inadequate" remedies. *United States Cane Sugar*

*Refiners' Ass'n v. Block,* 3 CIT 196, 201, 544 F.Supp. 883, 887, *aff'd,* 69 CCPA 172, 683 F.2d 399 (1982); *Luggage and Leather Goods Mfrs. of Am. v. United States,* 7 CIT 258, 266–67, 588 F.Supp. 1413, 1420–21 (1984). The "manifestly inadequate" standard is a limited one, however, because "mere allegations of financial harm, or assertions that an agency failed to follow a statute, do not make the remedy established by Congress manifestly inadequate." *National Corn Growers Ass'n v. Baker,* 840 F.2d 1547, 1557 (Fed.Cir.1988) (quoting *Miller & Co. v. United States,* 824 F.2d 961 (Fed.Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988)).

The Court of International Trade has also recognized an exception to the exhaustion doctrine where judicial interpretations of existing law are made after the contested administrative determination was published, and the new interpretation might have materially altered the agency result. *See Timken Co. v. United States,* 10 CIT 86, 630 F.Supp. 1327, 1334 (1986); *Rhone Poulenc, S.A. v. United States,* 7 CIT 133, 134–35, 583 F.Supp. 607, 609–10 (1984). The Court has also found it appropriate to consider claims not raised before the agency where Commerce did not adhere to controlling judicial precedents and where the plaintiff's arguments were based on facts available only in the confidential administrative record and the plaintiff was not timely informed of the deadline for access to the confidential record of business proprietary information.[3]

Here, such an exception exists. That is, *Freeport Minerals Co. v. United States,* 776 F.2d 1029 (Fed.Cir.1985), and the *Timken* decision cited in the foregoing quotation represent a subsequent change in the law, the interpretation of which, if applied, might have materially altered the agency's results. *Hormel v. Helvering,* 312 U.S. 552, 558–59, 61 S.Ct. 719, 722, 85 L.Ed. 1037 (1941). In fact, *Freeport Minerals, Timken* and the instant action are similar.

---

**2.** *Hormel v. Helvering,* 312 U.S. 552, 558, 61 S.Ct. 719, 722, 85 L.Ed. 1037 (1941).

**3.** *Alhambra Foundry Co., Ltd. v. United States,* 12 CIT ——, ——, 685 F.Supp. 1252, 1256 (1988).

In each matter, Treasury had issued a tentative determination to revoke an anti-dumping-duty order, which did not become final before enactment of the Trade Agreements Act. Under that statute, the ITA assumed administrative responsibility from Treasury and conducted further review under section 751. Like the situation here, the ITA in both *Freeport Minerals* and *Timken* focused its reviews on time periods which culminated on the dates of Treasury's original tentative determinations, leaving unreviewed years between Treasury's determinations and the ITA's first reviews. Of course, those years reflected the most current data. The Court of Appeals for the Federal Circuit in *Freeport Minerals* reviewed the statute, the regulations and the legislative history of the Trade Agreements Act and concluded that they required the ITA to use up-to-date information. The court held the ITA had abused its discretion by neglecting to review data as of the time of publication of its tentative determination to revoke. *See* 776 F.2d at 1034. The *Timken* court followed this decision. It rejected a contention that the period-of-review issue resolved by *Freeport Minerals* was improperly before the court because the plaintiff had failed to raise the issue at the administrative level, holding:

> ... The interpretation of existing law set forth in *Freeport Minerals*, if applied in this action, could have a substantial impact upon the ITA's determination.... 10 CIT at 93, 630 F.Supp. at 1334.

Those two cases and others[4] indicate that, despite any failure to exhaust administrative remedies, remand to the agency is appropriate since determinations on the existence, or likelihood of resumption, of sales at less than fair value should be based on timely information.

### Conclusion

In view of the foregoing, that part of plaintiff's motion for judgment upon the agency record which seeks to set aside the ITA's June 25, 1981 final results of its

administrative review and revocation of the antidumping finding as to clear plate and float glass from Japan should be, and it hereby is, granted, and the matter is remanded to the ITA for further review in accordance with this memorandum and order.

In view of the time that has passed, however, the parties are to confer and propose to the court on or before January 31, 1989 a schedule for such further review.

So ordered.

**4.** *See, e.g., UST, Inc. v. United States,* 831 F.2d 1028, 1032 (Fed.Cir.1987); *Matsushita Electric Industrial Co. v. United States,* 823 F.2d 505, 507 (Fed.Cir.1987).