PPG INDUSTRIES, INC., Plaintiff,

v.

UNITED STATES, Defendant,

and

Asahi Glass Co., Ltd., Central Glass Co., Ltd., Nippon Sheet Glass Co., Ltd., Intervenors–Defendants.

Court No. 81–07–00986.

United States Court of International Trade.

Dec. 13, 1991.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart and David Scott Nance, Washington, D.C., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Velta A. Melnbrencis, Washington, D.C., for defendant.

Brownstein Zeidman and Schomer, Irwin P. Altschuler, David R. Amerine and Claudia G. Pasche, Washington, D.C., for intervenors-defendants.

## MEMORANDUM

AQUILINO, Judge:

Before the court are the final results of a second remand to the International Trade Administration, U.S. Department of Commerce ("ITA") filed June 28, 1991 in this case, which challenges the agency's determination *sub nom.* *Clear Plate and Float Glass from Japan; Final Results of Administrative Review and Revocation of Antidumping Finding*, 46 Fed.Reg. 32,926 (June 25, 1981).

### I

The background of the case is set forth in the court's slip op. 88–174, 12 CIT 1189, 702 F.Supp. 914 (1988), which granted, in part, plaintiff's motion for judgment upon the agency record. Familiarity with that decision, which concluded that remand was "appropriate since determinations on the existence, or likelihood of resumption, of sales at less than fair value should be based on timely information", 12 CIT at 1194, 702 F.Supp. at 917, is presumed.

The ITA thereafter filed with the court results of the first proceedings on remand which stated that the agency had conducted a review of entries of the subject merchandise from February 17, 1977, the date of Treasury's tentative determination to revoke, through February 5, 1981, the date of its tentative determination to revoke the antidumping-duty order on clear plate and

float glass from Japan. From that review, the ITA concluded that revocation "was justified based on examination of updated information, which indicates that there have been no sales at less than fair value."

By "updated information", the agency meant data between February of 1977 and 1981. However, the ITA's regulation, 19 C.F.R. § 353.54(a) (1980), provided for revocation upon a determination not only of no sales at less than fair value but also of no likelihood of resumption of such sales. As to that second standard, during the period of the remand proceedings in 1989–90, the plaintiff petitioner had sought to introduce much more recent data, allegedly reflecting market conditions in the United States and in the home market for that time. The ITA did not take that information into account, in part upon the following stated rationale:

With respect to the question of likelihood of resumption of dumping, we must base our decision on information available as of June 25, 1981, the date of our revocation decision. The information submitted for the record by PPG refers to market conditions in 1988 and 1989, which means that it is all *ex post facto*, and therefore cannot be taken into account when deciding the merits of our 1981 likelihood decision.

We disagree with petitioner's contention that the Department has consistently focused on present market conditions in the United States and in the home market to predict whether there is a likelihood of resumption of dumping. In fact, we have focused on current market conditions only when recent pricing information was not available and parties submitted on the record sufficient, and relevant, information regarding market conditions. In this case, the Department had found no dumping for a period of six years—more than three times the minimum period required under the former regulations. More importantly, [the] parties submitted no relevant information on the record regarding "current" market conditions, *i.e.*, information on market conditions that would have been available to the Department *as of June*

*21, 1981.* All of the information submitted by PPG refers to conditions in 1988 and 1989 and thus would not have been available to the Department in 1981.

The plaintiff complained to the court by way of a motion for a second remand, which was granted in an unpublished decision stating that defendant's foregoing position was not in accordance with the law of this case

> or with law otherwise governing the ITA which does not preclude taking into account data of the kind offered by the plaintiff, nor did this court indicate that the agency "must" base its decision on information available as of June 25, 1981. On the contrary, the time that has passed since then makes consideration of more recent data appropriate, if not necessary.
>
> The goal of these proceedings now is to determine if such data confirm the historical administrative view that resumption of dumping was unlikely and that revocation therefore is in order.

The intervenor-defendants reacted with a motion for rehearing, supported by the defendant. It was denied in a second unpublished decision, whereupon additional remand proceedings before the ITA ensued.

## II

The results of those additional proceedings are at hand. The agency summarizes them as follows:

> On March 29, 1991, we issued draft remand results, in which we thoroughly analyzed data submitted by the petitioner, PPG Industries, Inc. (PPG), and concluded that there was no likelihood of resumption of dumping. We gave the interested parties an opportunity to comment on our draft results. Upon request of PPG, we provided PPG with additional time to substantiate its allegation of likelihood of resumption of dumping. We also allowed defendant-intervenors an opportunity to comment on this additional submission.
>
> After thorough analysis of the data submitted by PPG in this remand proceeding, we determine that the data do not "confirm the historical administrative

> view that resumption of dumping was unlikely and that revocation therefore is in order."

The agency's determination states that the draft remand results

> noted several deficiencies in the information submitted by PPG which, taken as a whole, failed to provide the support needed to sustain PPG's arguments regarding the likelihood of resumption of dumping of clear plate and float glass.

Allegedly, the deficiencies were in claims regarding prices in the United States and in Japan. However, the determination proceeds to explain at length that, in submissions since the draft issued, PPG "succeeded in redressing these deficiencies", to wit:

> ... With respect to establishing that there exists a high degree of price competition in the United States, PPG has submitted sworn affidavits asserting that the subject merchandise is a commodity product, and that, since there are no qualitative differences between different manufacturers' product, prices for identical products will be very similar, regardless of the identity of the producer.
>
> ... PPG has submitted extensive data regarding overall price levels in the United States, and PPG's U.S. market share. In support of PPG's claimed market share ..., [it] has submitted ... charts illustrating the capacity of the major U.S. float glass producers, and charts prepared for internal PPG purposes, showing estimates of U.S. demand supplied by PPG. These documents confirm that PPG is a major market participant. PPG also demonstrates that there is a high degree of similarity of prices among U.S. manufacturers in the U.S. market. In its chart illustrating overall U.S. float glass capacity, five companies appear as major U.S. producers. For four of these five companies, PPG has submitted ... a series of price lists for glass of varying thicknesses. These price lists strongly support PPG's contention regarding the uniformity of U.S. producers' prices, thereby demonstrating a reasonable likelihood that similar thicknesses of float

glass are sold at similar prices, regardless of the source of the glass. PPG ... has also provided invoices indicating its own actual sales prices of float glass in the U.S. market.

We have therefore concluded that it is reasonable to believe that PPG's U.S. prices are representative of the prices at which the Japanese product would be sold in the United States.

With regard to prices in Japan, the final remand results state that, at the time of the draft thereof,

PPG had not established ... that the price list submitted in PPG's February 8, 1991 submission was in fact a recent price list .... In its June 14, 1991 submission, PPG submitted a sworn affidavit asserting that the price list is ... recent ... and that discounts in the Japanese market average ... as previously claimed by PPG. We determine that the affidavit, considering the experience and knowledge of the individual affiant, provides a reasonable basis for accepting PPG's claims with respect to prices as listed in the subject price list, as well as the level of discounts that ordinarily applies to sales in the Japanese market. ... [W]e also note that PPG has made two conservative assumptions in its estimate of Japanese prices. First, PPG has assumed a maximum discount ... on sales of Japanese glass. Second, PPG has used the lowest price listed on the price list for the thicknesses which we are considering. Since per square foot prices for each thickness vary depending on various factors, such as the area and cut of the glass, PPG's selection of the lowest listed price for each thickness serves as a conservative assumption with respect to float glass prices in Japan.

We therefore determine that it is reasonable to assume that PPG's data with respect to prices in Japan serves [sic] as a reasonable basis for allegations concerning prices of float glass in Japan.

The remand results then note that a comparison of those prices for Japan with PPG's U.S. prices "generates a margin for every possible comparison, even to U.S. list prices unadjusted for insurance, freight, and duty." Finally, the remand results at bar make the following points:

... First, a careful examination of PPG's data indicates that there are in fact a variety of per square foot prices for every given thickness of float glass, depending on such factors as the area and the cut. There is therefore no such thing as the per square foot price for 3mm glass in the United States or Japan, but only prices for varying cuts and areas. In several instances, PPG has matched identical models of float glass in Japan and the United States. In other instances, it is less clear that PPG has followed correct model match procedures. In any event, we do not consider these issues critical in this analysis since PPG has compensated for these potential differences by making conservative assumptions. PPG has offered a comparison of the lowest prices from the ... price list with the highest prices on the U.S. side, namely, unadjusted U.S. list prices. This comparison consistently generates dumping margins for every thickness of glass. Second, we note that PPG's submissions represent the type and volume of data that it is reasonable to expect PPG to have gathered. It would not be reasonable to require PPG to gather stronger evidence to support its allegations. PPG has satisfied the Department that it has used all reasonably available resources in gathering data for its allegations, and that it has adequately explained ... the obstacles hindering further collection of data.

### III

The intervenor-defendants have filed papers in opposition to the foregoing results, and for a third remand, arguing that the ITA erred as a matter of law in first requesting, and then failing to reject, additional information provided by the petitioner, that the results are not supported by substantial evidence on the record and that reinstatement of the dumping finding would be inappropriate without an injury determination.

The intervenor-defendants describe at length the proceedings before the agency subsequent to the court's denial of rehearing earlier this year. The gravamen of their complaint is as follows:

By the terms of the second remand order the ITA was directed to remedy what the court perceived was the ITA's failure to examine PPG's September 1, 1989 information concerning the 1988–1989 period. The second remand order did not instruct the agency to reopen the administrative record and collect *additional* information. Nonetheless, rather than examining the information already contained in the administrative record of the first remand review, the ITA exceeded the mandate of the court and reopened the ... record to provide PPG the opportunity to *"further* substantiate the claims made in [its] September 1, 1989 submission ...." RR2 Doc. #2. When, in reply to this request, PPG submitted unresponsive information concerning an even more recent time period, the ITA issued yet *another* request for additional information. RR2 Doc. #19.

The ITA's repeated reopening of the administrative record to permit plaintiff to submit additional information to support its 1989 allegation was contrary to law. The agency's failure to examine the first remand record to determine whether there was a likelihood that dumping had resumed was the only error perceived by the court in the first remand proceeding. Upon second remand, the ITA was directed to remedy that error by considering the September 1, 1989 submission already before it to determine whether *that* information contradicted the historical view of no likelihood of resumption of sales at less than fair value. The reopening of the first remand record and the collection of additional information went far beyond remedying the perceived defect of the first remand, and exceeded the ITA's authority provided by the court's remand order.

Defendant-Intervenors' Memorandum in Support of Motion for Remand and in Opposition to the International Trade Administration's Second Remand Determination, pp. 19–20 (emphasis in original).

The intervenor-defendants are correct in their claim that the second remand order did not instruct the ITA to reopen the administrative record and collect additional information. However, it is equally true that that order did not restrict the agency from doing so. Indeed, the intent of the remand was to permit maximum administrative flexibility.

After careful consideration of intervenor-defendants' arguments, and comparison with the record of the contested proceedings, the court is not persuaded that the ITA abused its discretion and the law governing performance of its responsibilities. Of course, in the interest of orderly procedure, the agency has the authority to disregard information which is "untimely provided", and it can also resort to "best information available" to foreclose a party from skewing analysis through selective submission of information. *See, e.g., N.A.R., S.p.A. v. United States,* 14 CIT ——, ——, 741 F.Supp. 936, 941 (1990). *See also Olympic Adhesives, Inc. v. United States,* 899 F.2d 1565, 1571–72 (Fed.Cir.1990); *Brother Industries, Ltd. v. United States,* 15 CIT ——, ——, 771 F.Supp. 374, 383 (1991); *Pistachio Group of the Ass'n of Food Indus. v. United States,* 11 CIT 668, 679, 671 F.Supp. 31, 40 (1987).

Here, the ITA determined to accept the information proffered by the plaintiff and, on the record developed, that decision was not out of bounds. Plaintiff's submissions were within the timeframe allotted on remand, and perceived inadequacies were remedied in an expeditious manner.

The resultant substantive issue before the agency was whether the information received indicated likelihood of resumption of dumping. The Court of Appeals for the Federal Circuit has referred to such a question as "inherently predictive" in nature as follows:

... In no case will the Commission ever be able to rely on concrete evidence establishing that, in the future, certain events *will* occur upon revocation of an antidumping order. Rather, the Commis-

sion must assess, based on currently available evidence and on logical assumptions and extrapolations flowing from that evidence, the likely effect of revocation of the antidumping order on the behavior of the importers.

*Matsushita Electric Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed.Cir.1984) (emphasis in original) (referring to analogous responsibilities of the International Trade Commission under 19 U.S.C. § 1675(b)(1)). The ITA itself in this case has stated that,

> since the availability and type of relevant data may vary widely from case to case, it is impossible for the Department to articulate a specific standard or state definitively what combination of data would cause the Department to determine that resumption of dumping is likely.

Second Remand Results ("R.Doc 35") at 14.

As quoted above, the agency concluded that the information provided by PPG was of the type and volume that reasonably could have been expected under the circumstances, and, although it disagreed with plaintiff's contention that the intervenor-defendants' failure to contradict the submissions amounted to an admission, the ITA noted in making its determination that it was limited to the information on the record. *Cf. Matsushita Electric Indus. Co. v. United States*, 750 F.2d at 934–35, 937. The agency, not this court, must assess the credibility of that information. *See, e.g., Negev Phosphates, Ltd. v. U.S. Dep't of Commerce*, 12 CIT 1074, 1092, 699 F.Supp. 938, 953 (1988) (the court "lacks authority to interfere" with agency discretion to "interpret reasonably" evidence collected in an investigation). In this case, interpretation of the record developed led the ITA to report that comparison of the data "consistently generates dumping margins for every thickness of glass." R.Doc 35 at 12.

Such a result could hardly have been interpreted to support the thesis of the intervenor-defendants, namely, that there was and is no likelihood of the resumption of dumping by them. Stated another way,

there is substantial evidence on the record in support of the ITA's determination. *Cf. Matsushita Electric Indus. Co. v. United States*, 750 F.2d at 933 ("Substantial evidence ... means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938), and *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951). Moreover, it has been held that a decision whether to revoke an antidumping-duty order does not depend on the weight of the evidence on the record, rather on the agency's expert analysis of that evidence. *Sanyo Electric Co. v. United States*, 15 CIT ——, ——, Slip Op. 91–110, at 4, 1991 WL 274458 (Dec. 6, 1991), and *Toshiba Corp. v. United States*, 15 CIT ——, ——, Slip Op. 91–107, at 4, 1991 WL 255440 (Nov. 26, 1991), citing *Manufacturas Industriales de Nogales, S.A. v. United States*, 11 CIT 531, 535–36, 666 F.Supp. 1562, 1566–67 (1987).

Another argument of the intervenor-defendants is that, consistent with Article VI of the General Agreement on Tariffs and Trade and 19 U.S.C. § 1673, the antidumping-duty order should not be reinstated without an injury determination by the International Trade Commission. They suggest that "the underlying injury determination may no longer be valid under present market conditions", contending that, in a more recent determination, the Commission concluded that the domestic glass industry "would *not* be injured if certain outstanding countervailing duty orders concerning float glass were revoked." Defendant–Intervenors' Memorandum, pp. 69–70 (emphasis in original). Even if true, intervenor-defendants' suggestion does not undermine the ITA's determination herein. If they believe that the domestic industry is no longer injured by reason of imports of clear plate and float glass from Japan, the Commission can be petitioned for relief under 19 U.S.C. § 1675(b)(1).

## IV

In this case, on the record at hand, the court can only conclude that the results of

the second remand to the ITA are supported by substantial evidence and are otherwise in accordance with law. Intervenor-defendants' motion for a third remand must therefore be denied, and judgment must enter accordingly.

### JUDGMENT

This case having been duly submitted for decision; and the court, after due deliberation, having rendered decisions herein; Now, therefore, in conformity with said decisions, it is

ORDERED that intervenor-defendants' motion for remand to the International Trade Administration, U.S. Department of Commerce be, and it hereby is, denied; and it is further

ORDERED, ADJUDGED and DECREED that the results of the second remand to the International Trade Administration, U.S. Department of Commerce filed June 28, 1991 be, and they hereby are, affirmed; and it is further hereby

ORDERED, ADJUDGED and DECREED that the finding of dumping published *sub nom. Clear Plate and Float Glass From Japan,* 36 Fed.Reg. 9,009 (May 18, 1971), be reinstated in accordance with law.